UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TROY McMASTER,

            Plaintiff,                              No. 18-13875

v.                                                  District Judge Sean F. Cox
                                                    Magistrate Judge R. Steven Whalen

KOHL'S DEPARTMENT STORES,
INC.,

            Defendant.
_____ /

## OPINION AND ORDER

Plaintiff has brought this case under the Americans With Disabilities Act

("ADA"). Before the Court is Plaintiff's Second Motion to Compel Discovery [ECF No.

53]. For the following reasons and under the following terms, the motion is GRANTED

IN PART AND DENIED IN PART.

### I.    GENERAL PRINCIPLES

Fed.R.Civ.P. 26(b) provides as follows concerning the scope of discovery in a civil

case:

> "Unless otherwise limited by court order, the scope of discovery is as
> follows: Parties may obtain discovery regarding any nonprivileged matter
> that is relevant to any party's claim or defense and proportional to the needs
> of the case, considering the importance of the issues at stake in the action,
> the amount in controversy, the parties' relative access to relevant
> information, the parties' resources, the importance of the discovery in

-1-

resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."

The Court has broad discretion over discovery matters. *Trepel v. Roadway Express, Inc.*, 194 F.3d 708 (6th Cir. 1999).

## II.   Specific Discovery Requests

### A.   Kelly Balogh's emails

Kelly Balogh was an Administrative Assistant employed by Kohl's, and was not a decision maker in Plaintiff's termination, nor is she a comparator. Rather, Defendant describes her involvement as follows:

> "Ms. Balogh's only involvement in this matter was a telephone call she made to the Macomb County Sheriff's Department on December 11, 2017, after she received a troubling text message in the middle of the night from Plaintiff wherein he requested information regarding Kohl's suicide hotline." *Defendant's Response,* ECF No. 60, PageID.1011.

Plaintiff argues that Balogh's emails "are relevant to establish whether Defendant had a pattern or culture of discriminating against older employees, and/or employees Kohl's regarded as disabled." *Motion*, ECF No. 53, PageID.840.  In support, Plaintiff cites *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308 (6th Cir. 2019), where the Sixth Circuit held that emails from a non-decision maker were relevant to the issue of whether the defendant's purported reason for terminating the plaintiff was pretextual. In that case, the email appeared to be a "quasi-official communication," written at the direction of a decision maker, not, as the email's author testified, merely based on rumor

or innuendo. Ultimately, the Court held that it was for the jury to decide whether the author wrote the email based on rumor, or based on the word of a decision maker. If the jury found the latter, that would support a claim of pretext.

Plaintiff does not explain how what the Sixth Circuit termed the "unique context" of *Babb*, 942 F.3d at 323, applies to Ms. Balogh's emails, which she would have sent after she herself received the troubling email from the Plaintiff, or how such emails would show a "culture" of age discrimination.

However, Ms. Balogh's emails to decision makers regarding this incident would be relevant to the "regarded as" element of Plaintiff's ADA claim. Defendant appears to recognize this at least in part, stating that it searched David Ruffing and Jolene Christensen's email accounts for calendar year 2017.  ECF No. 60, PageID.1011.  To be complete, and under the theory that any of Ms. Balogh's emails would be contained in the files of the decision makers, a more complete search would have included Randy Meadows and Dallas Moon.

But in terms of the present motion to compel, and to ensure a complete but proportional response to the discovery request, the Defendant will produce all off Ms. Balogh's emails either to or from Ruffing, Christensen, Meadows, and Moon for calendar year 2017.

### B.    Time Periods and Scope of ESI Searches

The parties have agreed to an end date for the email accounts of Christensen,

Roszczewski, Ruffing, Meadows, Moon, Schrader, and Plaintiff, but disagree as to the start dates. Plaintiff requests a start date of July 1, 2014. Defendant, on the other hand, prefers a start date of September 1, 2016, stating that Ruffing and Human Resources Advisor Jay Schrader began discussing Plaintiff's performance issues in the Fall of 2016.

Under the broad scope of discovery contemplated by Rule 26(b), Defendant's date range is too narrow. Plaintiff's leave of absence–which is related to his "regarded as" claim–was January 15, 2015. This is the appropriate start, and Defendant will therefore produce the requested emails of Christensen, Roszczewski, Ruffing, Meadows, Moon, Schrader, and Plaintiff starting on that date.

The parties have also agreed to an end date for Ramona Tanksley's email account, but disagree as to the appropriate start date. Defendant argues that the proper start date is March 1, 2018, Plaintiff argues September 1, 2016. Tanksley replaced Plaintiff as the Region 11 Loss Prevention Manager on March 26, 2018. From November 27, 2017 until March 26, 2018, she was a District Loss Prevention Manager (a lower position) in a different Region. She was not employed by Defendant in any capacity until November 27, 2017.

Ms. Tanksley's emails prior to the date she actually assumed Plaintiff's former position are relevant. It is unclear why Plaintiff would request emails from before she began her employment in a different position in a different Region. Indeed, such emails would not even exist. In any event, Plaintiff's motion will be granted to the extent that

Defendant will produce the requested emails from Ms. Tanksley's account beginning November 27, 2017.

Nicholas Hund was a RLPM for Region 6, but provided coverage for Region 11 during Plaintiff's medical leave and during the search for Plaintiff's replacement. Defendant has searched Hund's email account for the period covered by these events, from October 24, 2017 to March 1, 2018.  Plaintiff requests that the search be expanded to the period September 1, 2016 to August 19, 2019.  Hund himself was terminated on August 19, 2019. Plaintiff argues that the expanded range of emails is necessary "to compare how Defendant treated a similarly situated employee who was substantially younger than Plaintiff, who Defendant did not regard as disabled." ECF No. 53, PageID.842.

As Defendant points out, Hund's only involvement in Region 11 was during the six-month period from October 2017 to March 2018. Moreover, the Court has ordered the production of Hund's employment information from June 2013 to August, 2019, as a potential comparator. *See* ECF No. 49, PageID.765, 767.  An expanded search of Hund's email would be at best marginally relevant, and not proportional to Plaintiff's need for discovery. Plaintiff's request to expand the scope of Hund's emails will therefore be denied.

## C.   Search Terms

Here is another case in which the Court is called upon to decide whose competing

list of search terms is better suited for the search of large amounts of electronically stored information. In *United States v. O'Keefe*, 537 F. Supp. 2d 14, 23–24 (D.D.C. 2008), the Court, reflecting on the inherent complexity of formulating refined search terms, observed:

> "Whether search terms or 'keywords' will yield the information sought is a complicated question involving the interplay, at least, of the sciences of computer technology, statistics and linguistics."

Finding that the resolution of such questions was "beyond the ken of laymen," and should require the assistance of experts, the Court continued:

> "Given this complexity, for lawyers and judges to dare opine that a certain search term or terms would be more likely to produce information than the terms that were used is truly to go where angels fear to tread." *Id.*

I, for one, have no interest in going where angels fear to tread. Therefore, if the parties cannot agree on appropriately limited search terms, they will share the cost of retaining an expert to assist them. If they still cannot agree, then Plaintiff may renew his motion regarding the search terms, and will provide the Court with an expert report substantiating his position.[1]

---

[1] The parties are directed to my observation in *Webasto Thermo & Comfort North America, Inc. v. BesTop, Inc.*, 326 F.R.D. 465, 469 (E.D. Mich. 2018):

> "Adversarial discovery practice, particularly in the context of ESI, is anathema to the principles underlying the Federal Rules, particularly Fed.R.Civ.P. 1, which directs that the Rules 'be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.' In this regard, the Sedona Conference Cooperation Proclamation states:

### D.   Interrogatory No. 25

Plaintiff's Interrogatory No. 25 seeks a description of Defendant's methodology for complying with his instructions of searching for and producing electronically stored information. This is, in effect, discovery about discovery, and as such is at least one level of relevance removed from the substantive issues in this case. In response, Defendant proposed that these technical matters be discussed in a meet-and-confer session. Because the attorneys for the parties will in fact meet again, with the assistance of an expert, to discuss search terms, I agree that would be the more appropriate and efficient forum to resolve this request. As such, the motion is denied as to Interrogatory No. 25.

### III.   CONCLUSION

Under the terms set forth above, Plaintiff's motion [ECF No. 53] is GRANTED IN PART AND DENIED IN PART.

In addition, the Plaintiff's request for fees and costs in bringing this motion is DENIED.

---

'Indeed, all stakeholders in the system–judges, lawyers, clients, and the general pubic–have an interest in establishing a culture of cooperation in the discovery process.  Over-contentious discovery is a cost that has outstripped any advantage in the face of ESI and the data deluge.  It is not in anyone's interest to waste resources on unnecessary disputes, and the legal system is strained by 'gamesmanship' or 'hiding the ball,' to no practical effect.'"

IT IS SO ORDERED.

s/R. Steven Whalen
R. STEVEN WHALEN
United States Magistrate Judge

Dated: July 24, 2020

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of
record on July 24, 2020 electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager